AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

APR 07 2020

| United States of America | ) |
| v. | ) |
| Blaine Morgan<br>Year of Birth 1985 | ) Case No. 20-MJ-1018 |
| Defendant(s) | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **March 29, 2020** in the county of **McKinley** in the District of **New Mexico**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, U.S.C. 1111(a) | Murder |
| Title 18, U.S.C. 1153 | Crimes Committed in Indian Country |

This criminal complaint is based on these facts:

Please see attached affidavit.

☑ Continued on the attached sheet.

*David C. Loos*
Complainant's signature

DAVID LOOS - SPECIAL AGENT
Printed name and title

Sworn to before me and signed ~~in~~ my ~~presence~~ telephonically at direction
and submitted to me electronically

Date: April 7, 2020

City and state: Farmington, NM

*B. Paul Briones*
Judge's signature

B. Paul Briones
U.S. Magistrate Judge
Printed name and title

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 20-MJ-1018 |
| VS | ) | |
| | ) | AFFIDAVIT IN SUPPORT OF |
| Blaine Morgan | | |
| Year of Birth 1985 | ) | ARREST WARRANT |

**AFFIDAVIT**

I, the undersigned, being duly sworn, hereby depose and state as follows:

Introduction and Agent Background

1. Your affiant is a Special Agent (SA) of the Federal Bureau of Investigation (FBI) and has been employed in that capacity since July of 2010. Your affiant is currently assigned to the Albuquerque Division of the FBI, Gallup Resident Agency, and has primary investigative responsibility for crimes occurring within Indian Country; including violent crimes such as homicide, robbery, arson, aggravated assault, sexual assault and narcotics violations. The information set forth in this affidavit has been derived from an investigation conducted by your affiant and/or communicated to him by other sworn Law Enforcement Officers. This affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaint and arrest warrant for Blaine MORGAN and does not set forth all of my knowledge about this matter. During the course of the investigation the following information was obtained:

## Probable Cause

2. On March 29, 2020, the Navajo Nation Police Department notified the FBI that I.A., year of birth 1993, (hereafter John Doe) had been stabbed multiple times and was transported to the Gallup Indian Medical Center where John Doe was pronounced dead. The Navajo Police Department arrested Blain MORGAN (hereafter MORGAN) who had turned himself in to authorities.

3. During an interview, A.A., year of birth 1990 (hereafter Witness 1), stated they were at the trailer of G.C., year of birth 1979, when MORGAN, and K.P., year of birth 1984 (referenced as Witness 4 below), were arguing about work related matters. Witness 1 stated she walked in the trailer with John Doe and heard K.P. ask John Doe for help. That is when John Doe, K.P. and MORGAN walked outside. Witness 1 did not see what happened outside but heard John Doe say "I'm bleeding." Witness 1 saw MORGAN holding a knife and heard MORGAN say "don't mess with me."

4. T.R., year of birth 1990 (hereafter Witness 2), was interviewed and stated she was home when MORGAN knocked on her door and told Witness 2 that he (MORGAN) did something and needed to talk with Witness 2. MORGAN told Witness 2 that he (MORGAN) was getting attacked by two people and MORGAN pulled out his knife. MORGAN told Witness 2 that one of the individuals had him in a choke hold and MORGAN believes he stabbed him.

5. During an interview, MORGAN stated he was at a trailer talking to a guy (believed to be K.P. or Witness 4) about oil pipeline work when K.P. started getting aggressive. MORGAN stated K.P. told MORGAN that if you're going to get all bad, I'm going to call my

brother. MORGAN stated that is when John Doe arrived at the trailer. MORGAN stated he was leaving when he (MORGAN) was hit in the head and stumbled out the door of the trailer. MORGAN stated he thought to himself, "oh shoot, they are trying to jump me." MORGAN stated because he's a rancher he had a knife. MORGAN pulled the knife out and told them to "get away, get away." MORGAN stated he waived his knife from side to side randomly trying to back them off. MORGAN was told by investigators that the wounds on John Doe's body were not lacerations from a knife being moved from side to side. MORGAN stated he did not know why the wounds were different. MORGAN stated he wasn't sure what he did and could have done it another way. MORGAN stated he did it out of self-defense after getting hit in the head.

6.   MORGAN stated he hurried and jumped in his truck and thought to himself "good thing I didn't get jumped." MORGAN stated he looked at his hand that had blood on it and MORGAN thought "how am I going to deal with this." MORGAN stated he left the scene because he thought he was going to get jumped. MORGAN stated he called and met the cops and was subsequently detained.

7.   During the interview of MORGAN, your Affiant examined MORGAN's head for any signs of swelling, bruising, or cuts that might be consistent with a strike to the head. No wounds of any kind were observed.

8.   During an interview, S.T., year of birth 1995 (hereafter Witness 3), stated they were at the trailer when Witness 3 heard MORGAN and K.P. (Witness 4) arguing about work. Witness 3 heard MORGAN call K.P. a "puss." Witness 3 saw K.P. get "riled up." Witness 3 stated John Doe came into the trailer and was told by K.P. that MORGAN was "talking shit." Witness 3 saw MORGAN leaving the house when Witness 3 saw John Doe push MORGAN.

Witness 3 hurried outside but did not see the fight. Witness 3 did not see MORGAN get hit in the head. Witness 3 stated MORGAN and John Doe were already apart when Witness 3 got outside. Witness 3 saw K.P. helping John Doe inside the trailer. Witness 3 thought John Doe had just been hit good and did not know MORGAN had a knife.

9. During an interview, K.P., year of birth 1984 (hereafter Witness 4) stated MORGAN and John Doe were arguing inside the trailer and decided to take the argument outside. Witness 4 stated MORGAN threw the first punch. Witness 4 saw MORGAN hit John Doe in the chest right in the heart. Witness 4 stated John Doe backed up and that is when John Doe and MORGAN wrapped up like boxers do which your Affiant believes means they were body to body holding each other with their arms to prevent the other from moving or fighting. Witness 4 stated that is when Witness 4 saw MORGAN stab John Doe. Witness 4 stated MORGAN then just walked away like nothing had happened.

10. After the fight, Witness 4 heard John Doe say "I can't breath." Witness 4 helped John Doe into the trailer and Witness 4 saw John Doe bleeding. Witness 4 tried to put pressure on John Doe's wounds. Witness 4 stated John Doe told Witness 4, "don't let me die, don't let me die."

11. During an interview, B.B., year of birth 1995 (hereafter Witness 5) stated they were at the trailer when Witness 5 heard MORGAN and K.P. (Witness 4) talking about work. Witness 5 stated MORGAN was being prideful about his work. Witness 5 stated he saw John Doe come into the house mad and Witness 5 stated John Doe was acting aggressive. Witness 5 stated he heard K.P. tell John Doe that, "this fucker is calling me out," referring to MORGAN.

Witness 5 heard MORGAN tell John Doe that he (MORGAN) was not calling people out and that he (MORGAN) was just asking people where they work.

12. Witness 5 believes he heard John Doe say, "let's take this outside," and "let's box it out." Witness 5 stated he saw John Doe, K.P., and S.A., unknown year of birth, follow MORGAN outside. Witness 5 did not see the fight and does not know how John Doe was stabbed. Witness 5 walked outside and saw MORGAN holding a knife.

13. No witnesses saw John Doe or MORGAN with weapons prior to the fight. As described above, multiple witnesses saw MORGAN holding a knife after the fight. No witnesses described John Doe as a having a weapon after the fight.

14. John Doe was transported to the Gallup Indian Medical Center where he was pronounced dead. Your Affiant viewed John Doe's body and saw what appeared to be three stab wounds.

### Jurisdictional Statement

15. On March 30, 2020, Navajo Criminal Investigator Robert James confirmed that the location of the area that Navajo Police identified as the area where the incident occurred is within the boundaries of the Navajo Indian Reservation, which is Indian Country in the District of New Mexico. Further, MORGAN is an enrolled member of the Navajo Nation.

### Conclusion

16. In view of the above facts, your affiant submits that there is probable cause to believe that Blaine MORGAN, an enrolled member of the Navajo Nation, violated Title 18 United States Code (USC) 1111(a), MORGAN unlawfully killed John Doe with malice aforethought. The incident occurred at 138 Padre Canyon Road, Church Rock, New Mexico,

which is within the exterior boundaries of the Navajo Nation and is "Indian Country," in violation of Title 18, United States Code, Section 1153.

17. Assistant United States Attorney Kyle Nayback reviewed and approved this affidavit for legal sufficiency.

Respectfully Submitted,

SA David C. Loos
Federal Bureau of Investigation
Albuquerque Division
Gallup Resident Agency

telephonically

Submitted and sworn to before me this 7th day of April 2020. and submitted to me electronically

UNITED STATES MAGISTRATE JUDGE