IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

Plaintiff,

v. 20-CR-1219 JB

BLAINE MORGAN,

Defendant.

# MOTION FOR REVIEW AND AMENDMENT OF DETENTION ORDER

Blaine Morgan, by and through undersigned counsel, respectfully requests that the Court reopen the hearing in light of newly-discovered information, pursuant to 18 U.S.C. § 3142(f), review its previously entered order of detention, and order Mr. Morgan's release under appropriate conditions. At the detention hearing on July 13, 2020, the Court indicated that it would reconsider its order to detain Mr. Morgan if Pretrial Services determined that it was able to monitor Mr. Morgan at his home by GPS or RF transmitter. Pretrial Services has since confirmed that they are able to do so, and Mr. Morgan asks that the Court reconsider the order of detention in light of this new information. The government opposes this motion.

## I. Facts

Mr. Morgan is charged with a single count of second degree murder in

connection with events that took place on March 29, 2020. Mr. Morgan was arrested by Navajo authorities on that day, and was held by the Navajo courts until approximately July 6, 2020, when he was arrested by federal agents in connection with this case. He has remained continuously in custody since March 29, 2020.

The Court held a hearing on the issue of Mr. Morgan's release from custody pending trial on July 13, 2020. After the hearing, the Court ordered that Mr. Morgan be detained based on its finding that there were no conditions that would reasonably assure his appearance as required. Order of Detention, doc. 22. The Court indicated at the hearing that it would be willing to reconsider its order if Pretrial Services determined that Mr. Morgan could be monitored by GPS at his home in Church Rock. At the time of the hearing, Pretrial Services did not know whether there was cellular telephone service in the area.

Upon further investigation, Pretrial Services determined that cellular service is good in the area of Mr. Morgan's home in Church Rock, meaning that he can be monitored by GPS bracelet. It also appears that Mr. Morgan could be monitored by RF proximity device, which would not require cellular service at all.

Pretrial Services also confirmed, since the time of the hearing, that they are able to issue a portable breathalyzer device (Soberlink or Sobrieter) to Mr. Morgan to verify his compliance with any order to refrain from drinking alcohol.

Mr. Morgan has no objection to using a location monitoring device or

portable breathalyzer while on release, and asks the court to consider releasing him from custody with conditions that require him to use one or both of those devices.

Mr. Morgan is a long-time resident of Church Rock, NM, where he has lived for all but three of the last fifteen years. He lives with his four children and their mother in a house owned by his partner's parents. Prior to moving to Church Rock approximately fifteen years ago, Mr. Morgan lived in his family home in Crownpoint, NM. The only time he lived outside of New Mexico was for a period of several years, when he lived near Phoenix, AZ.

Mr. Morgan has close relationships with his four siblings, with whom he talks on a daily basis. He also has a good relationship with his parents, with whom he also talks on a daily basis. His four children are between the ages of five and thirteen, and he is active in their lives. As a family they raise livestock and the children show the animals at livestock shows on a regular basis. Apart from his work on the oil fields, which required him to be away from home for two weeks at a time, Mr. Morgan has never been separated from his family for a period as long as his current four-month period of incarceration.

The weight of the evidence against Mr. Morgan is not overwhelming. Witness accounts taken shortly after the incident show that the decedent was acting aggressively toward Mr. Morgan, suggested that he and Mr. Morgan "take it outside," and that the decedent initiated a physical confrontation with Mr. Morgan

by pushing him. Based on the criminal complaint alone, Mr. Morgan appears to have a viable self-defense argument.

Mr. Morgan showed in the short period after the incident that he was willing to cooperate with law enforcement in their investigation. Mr. Morgan called Navajo law enforcement shortly after the incident and met them at a time and place of their choosing. Mr. Morgan was arrested without incident when he met with law enforcement.

## II. Argument

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The pretrial detention statutes of the Bail Reform Act follow these principles. *Id*. Congress imposed procedural safeguards designed to limit detention to only those instances when it is clearly necessary. *United States v. Holloway*, 781 F.2d 124, 125-126 (8th Cir. 1986); S. Rep. No. 225, 98th Cong. 1st Sess. 8 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3191 (recognizing a detention statute may be constitutionally defective if it "fails to provide adequate procedural safeguards or if it does not limit pretrial detention to cases in which it is necessary to serve the societal interests it is designed to protect").

The statutory scheme favors pretrial release over detention. *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007); *United States v. Orta*, 760 F.2d 887, 890

(8th Cir. 1985) (en banc). Any doubts regarding release should be resolved in the defendant's favor. *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990). As a result, only in "rare" cases should pretrial release be denied. *Id.*, *see also United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991) (pretrial detention is an exceptional step); *Sabhnani*, 493 F.3d at 75 (pretrial detention is appropriate for only a limited group of offenders); *Orta*, 760 F.2d at 891 (Congress intended that "very few" defendants would be subject to pretrial detention).

18 U.S.C. § 3142 provides that a judicial officer must consider various release options before ordering detention. 18 U.S.C. § 3142(a), (b) & (c). A defendant may be detained only if the judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required [or] the safety of any other person and the community. . . ." 18 U.S.C. § 3142(e). The Act requires a reasonable assurance, not a guarantee. *United States v. Xulam*, 84 F.3d 441, 444 (D.C. Cir. 1996). Indeed, Congress envisioned the fashioning of conditions allowing release even "where there is a substantial risk of flight." H. Rep. No. 1030, 98th Cong. 2d Sess. 15 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3198.

The burden is on the government to prove the detention standard has been met. *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003). The government must meet its burden with respect to flight risk by a preponderance of the evidence

and with respect to danger by clear and convincing evidence. 18 U.S.C. § 3142(f); *United States v. Charley*, 2010 WL 4338094, * 4 (D.N.M. Sept. 9, 2010) (unpublished). Clear and convincing evidence is evidence that "place[s] in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable." *United States v. Valenzuela-Puentes*, 479 F.3d 1220, 1228 (10th Cir. 2007) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)).

Congress listed a number of factors that a court must consider in making the release determination. They are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, employment, community ties, criminal history and whether, at the time of the offense, the person was on probation, parole or conditions of release; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

Only a "serious" risk of flight warrants detention. 18 U.S.C. § 3142(f)(2)(A); *United States v. Nwokoro*, 651 F.3d 108, 110 (D.C. Cir. 2011) (stressing the risk of flight must be serious). Strong community ties favor release, even where those ties are to a community other than the one where the case is pending. *See Townsend*, 897 F.2d at 995. Here, Mr. Morgan's entire life is centered around his family in Church Rock and Gallup (which are only about thirty-five miles apart). He has no reason or

means to abandon his life and his family on the Navajo Reservation even in the face of these serious charges.

As serious as the charges are, the weight of the evidence is not overwhelming. Witness accounts that the decedent was the aggressor and initiated a physical fight suggest that Mr. Morgan was protecting himself and that he has a viable self-defense argument. This possibility is apparent even on the face of the criminal complaint, and should factor heavily in the Court's consideration of the weight of the evidence.

Mr. Morgan's actions immediately after the incident show an extremely high level of cooperation with law enforcement in their investigation. He not only called the police to report what had happened, but voluntarily met with Navajo police to be arrested. There is little more he could possibly have done to show that he is willing to appear as required for this case. His actions relative to this case should dramatically outweigh any past conduct suggesting the opposite.

Finally, Pretrial Services' confirmation that they can monitor Mr. Morgan's location and his compliance with any geographic restrictions the Court might impose, and that they can monitor his compliance with an order to refrain from drinking alcohol show that conditions of release exist that go far beyond what is necessary to reasonably assure his appearance.

In light of the Court's ability to monitor Mr. Morgan remotely, he respectfully requests that the Court reconsider its Order of Detention and order his

release with whatever conditions the Court deems appropriate.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
111 Lomas Blvd. NW
Suite 501
Albuquerque, NM 87102

By: /s/ Hans Erickson
HANS P. ERICKSON
Assistant Federal Public Defender